CECILE BELISLE *vs.* RAOUL BOSQUET.
EDMUND BELISLE *vs.* SAME.

MAY 24, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. These are actions of trespass which were tried together in the superior court. They arose out of an alleged assault and battery by the defendant upon plaintiff Cecile Belisle, wife of Edmund Belisle. Mrs. Belisle sued for aggravated assault and battery, and her husband brought his action against the defendant for the latter's criminal conversation with her. Defendant pleaded not guilty to each action. A verdict of guilty was returned against him in each case. He thereupon moved for a new trial in each case and these motions were denied by the trial justice. To such denials defendant has duly prosecuted bills of exceptions to this court. Since the husband's action derives from and is dependant upon the wife's action

we shall hereinafter, in our discussion of the facts, refer to her case only.

The evidence may be summarized briefly as follows: Mrs. Belisle testified that the defendant criminally and sexually assaulted her in his automobile at Woonsocket some time between 11 and 11:30 o'clock, p.m., on December 30, 1941. In her examination in chief she related the events leading up to the assault and substantially described the manner in which she was attacked. In cross-examination she was required by defendant's counsel to describe in detail the alleged attack made upon her by the defendant. The result was a more or less complete word picture of the manner and extent of defendant's alleged assault and battery.

According to her testimony she went to defendant's cafe at about 7 p.m. to meet her husband who had gone there earlier in the day. When she arrived he was not there but defendant prevailed upon her to wait for him. However, when he had not appeared by 11 o'clock, plaintiff decided to go home. Thereupon defendant offered to take her home in his automobile. He had previously driven her and her husband home together from the cafe but he never had driven her alone. She accepted the offer and defendant then, instead of going directly to her home, which was near the cafe, drove, over her repeated protests, to a rural section of the city, where he stopped his car and attacked her. She also testified that she protested against his conduct and physically resisted him but that he overpowered her. It further appears from her testimony that she immediately informed her husband, upon arriving home, of what had occurred.

Defendant admitted, in his testimony, that Mrs. Belisle had come to his cafe about the time she testified, that she had stayed there until 11 p.m., and that he had offered to and did drive her home. He denied that he drove the car to the place where she testified that he stopped and he also denied that he attacked her in any manner. He testified

that he had driven her directly to her home and then had returned to his cafe, being gone only fifteen minutes or so. On cross-examination he admitted that he was a friend of Mr. Belisle and knew him very well but testified that he was not so well acquainted with Mrs. Belisle, although she had been in his cafe several times with her husband and that he had on a number of occasions driven them home. He explained the actions against him as blackmail on the part of Mr. Belisle.

Edmund Belisle testified that on the morning after the alleged assault upon his wife he went to the defendant's cafe about 8:30 o'clock and told him of Mrs. Belisle's charge against him. Defendant denied the charge but when Belisle threatened to get out a warrant for his arrest he suggested a settlement and told Belisle to come back to the cafe later, about 10 a. m., which he did. When he arrived, however, two members of the Woonsocket police department were there also.

It appeared from defendant's testimony that he had called the police station after Belisle's first visit and stated that he was being blackmailed. Upon hearing Belisle's statement at the cafe of his wife's charge against the defendant, the police officers, the defendant and Belisle went to the latter's house and the officers talked to Mrs. Belisle. What was said at that time by Mrs. Belisle and by the police is a matter of controversy but it need not be discussed here because, in our opinion, it is of no consequence. The only thing that is of importance in the matter of this attempt by the defendant to have the police intervene is that no criminal charge was ever brought against either Mr. and Mrs. Belisle. Nor was any criminal charge against the defendant brought by the Belisles. But two days later, on January 2, 1942, they brought the instant civil suits against him.

This evidence raised what has been often called a typical jury question. On one side is a specific charge of assault and battery, supported by considerable detailed testimony of the circumstances under which the attack upon the plaintiff

was made, and, on the other, is a categorical denial by the defendant. There were no witnesses. There were but few, if any, circumstances that would weigh greatly, if at all, in deciding the question as to whether the plaintiff was attacked. The problem before the jury resolved itself largely into one of credibility. They apparently believed the plaintiff rather than the defendant. In the exercise of his independent judgment the trial justice has approved their verdict. We cannot disturb his decision unless it is clearly wrong.

Defendant's counsel recognizes this rule and he argues, as we understand him, that the great weight of the evidence preponderates against the verdict because, taking the evidence as a whole, it clearly appears that these plaintiffs have concocted and carried through a preconceived plan to extort money from the defendant. In his brief he labels this scheme as a "frame-up". This is a serious charge. If it is true, the trial justice was clearly wrong in approving the jury's verdict.

We find nothing in the evidence that would justify us in finding that such charge is true. If defendant felt that he was being made the victim of blackmail, he did not see fit to bring a complaint. Nor did the police department, with full opportunity to investigate, bring any complaint. Whether or not the charge made against the defendant by Mrs. Belisle was "a frame-up by the Belisles against Bosquet for the purpose of getting money", as stated in his brief, was dependent upon the credibility of Mrs. Belisle. If she was attacked as she testified, then she was entitled to compensatory damages and also to punitive damages for the injury which the defendant had done to her, and no blame would attach to either her or her husband in seeking from the defendant a settlement in money. On the whole, we are of the opinion that the trial justice quite properly appraised the situation on all the evidence before him and we, therefore, cannot say that he was clearly wrong.

Defendant's exception in each case is overruled, and each

case is remitted to the superior court for entry of judgment on the verdict.

*John R. Higgins, Higgins & Silverstein,* for plaintiffs.

*McKiernan, McElroy & Going, Peter W. McKiernan, John C. Going,* for defendant.